COURT OF APPEALS
DECISION
DATED AND FILED

September 4, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1657-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF1135

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRIAN LASHAWN CLARK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: T. CHRISTOPHER DEE, Judge. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Brian Lashawn Clark appeals the judgment convicting him of first-degree recklessly endangering safety with use of a dangerous weapon, delivery of heroin with use of a dangerous weapon, delivery of cocaine with use of a dangerous weapon, operating a vehicle without the owner's consent, and fleeing or eluding an officer.  Clark also appeals the order denying his postconviction motion.  We affirm.

## BACKGROUND

¶2      A jury found Clark guilty of numerous counts related to his drug dealing and fleeing from police in a stolen vehicle.[1]  The events culminated in an encounter with police during which Clark fired a handgun at an approaching officer, who then opened fire in response.  The circuit court imposed sentences totaling thirty-four years and ten months.

¶3      Clark sought postconviction relief, and the circuit court denied his motion without holding a hearing.  This appeal follows.  Additional background information relevant to the issues raised on appeal will be included below.

## DISCUSSION

¶4      Clark makes the following claims on appeal:  he was denied his right to a speedy trial; the circuit court erred when it allowed the State to present other-acts evidence; the circuit court erroneously exercised its sentencing discretion; and the circuit court erred when it denied his postconviction motion without holding a hearing.  We address each argument in turn.

---

[1]  The jury acquitted Clark of second-degree recklessly endangering safety and arson.

## I. Speedy Trial

¶5      Clark contends that his right to a speedy trial was violated and the circuit court misapplied the law in analyzing the issue. Courts employ a four-part balancing test to determine whether a person's constitutional right to a speedy trial was violated, considering: (1) the length of delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay resulted in prejudice to the defendant. *State v. Borhegyi*, 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998). "The right to a speedy trial … is not subject to bright-line determinations and must be considered based upon the totality of circumstances that exist in any specific case." *Id.* We will uphold the circuit court's factual findings unless they are clearly erroneous, but we will determine independently whether those facts establish a constitutional violation. *Id.* at 508-09.

### A. Length of Delay

¶6      The parties are in agreement that the length of delay in this case—728 days from the filing of the complaint to the start of trial—was presumptively prejudicial. *See State v. Urdahl*, 2005 WI App 191, ¶12, 286 Wis. 2d 476, 704 N.W.2d 324 ("Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial."). This functions as a triggering mechanism for the remaining factors. *See Borhegyi*, 222 Wis. 2d at 510. We address the weight accorded to the length of this delay in the discussion that follows.

**B. Reason for the Delay**

¶7 The parties disagree as to how much of the delay in this matter is attributable to the State. Clark claims at least 455 days of delay were attributable to the State. Meanwhile, the State contends that 199 of the days should be counted against it and no part should be weighted heavily.

¶8 "When considering the reasons for the delay, courts first identify the reason for each particular portion of the delay and accord different treatment to each category of reasons." *Urdahl*, 286 Wis. 2d 476, ¶26. Only "deliberate attempt[s] by the government to delay the trial in order to hamper the defense is weighted heavily against the State[.]" *Id.* "[D]elays caused by the government's negligence or overcrowded courts … are weighted less heavily." *Id.*

¶9 Conversely, "if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted." *Id.* Other valid reasons for delays include those "attributed to the ordinary demands of the judicial system." *Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976). "[I]f the delay is caused by the defendant, it is not counted." *Urdahl*, 286 Wis. 2d 476, ¶26; *see also* *State v. Provost*, 2020 WI App 21, ¶39, 392 Wis. 2d 262, 944 N.W.2d 23 ("[G]enerally, 'delays caused by defense counsel are properly attributed to the defendant.'" (Citation omitted)).

¶10 The criminal complaint was filed on March 7, 2017. Clark's trial began on March 4, 2019. Clark argues that the following periods should be attributed to the State: 49 days from April 16, 2018, to June 4, 2018; 59 days from June 4, 2018, to August 2, 2018; 130 days from August 2, 2018, to December 10, 2018; 67 days from December 13, 2018, to February 18, 2019; and 150 days of delay resulting from calendar congestion.

4

¶11     The State agrees that April 16, 2018, to June 4, 2018, is attributable to it, and submits that the delay was caused by the prosecutor's request for an adjournment due to a death in her family. The State, however, asserts that the delay does not weigh heavily against it. We agree with the State. There is no indication that this was a deliberate attempt to delay the case. As such, we turn our attention to the period from June 4, 2018, to August 2, 2018.

¶12     Clark argues that the delay during this period was caused by the State's failure to disclose an Internal Affairs investigation being conducted by the Milwaukee Police Department related to officers involved in the case who were listed as fact witnesses for the State, in violation of **Brady v. Maryland**, 373 U.S. 83 (1963), and **Kyles v. Whitley**, 514 U.S. 419 (1995). Clark moved the circuit court to proceed with the trial on June 4, 2018, excluding the officers under investigation as a sanction. The court declined to do so and delayed the matter until August 2, 2018. Clark submits that the delay was due to the State's failure to fulfill its discovery obligations and should be weighed heavily against the State.

¶13     In contrast, the State contends the delay was caused by a discovery issue intrinsic to the case and therefore cannot be counted against either party. The State submits that this time was spent litigating a complex discovery issue which did not involve exculpatory evidence and that even if the time could be counted against it, Clark is incorrect that it can be weighted heavily against the State. Having reviewed the record, we agree. The "period of time necessarily required for the hearing and disposition of pretrial motions, whether made by prosecution or defense, [is] not to be considered as delays caused by either party."[2]

---

[2] The circuit court's decision suggests that it agreed with the State that the delay between June 4, 2018, and August 2, 2018, related to "normal court proceedings."

*Scarbrough v. State*, 76 Wis. 2d 87, 101, 250 N.W.2d 354 (1977). This was not a deliberate attempt to delay the trial—it was, at worst, a delay caused by the government's negligence. *Urdahl*, 286 Wis. 2d 476, ¶26. It therefore cannot be weighted heavily against the State. *Id.*

¶14 We next consider the period of August 2, 2018, to December 10, 2018. The parties set the trial date for December 10th, which was the earliest date that could accommodate the prosecution, defense, and court calendars. Clark contends that the circuit court disregarded the fact that the State was responsible for causing the unjustified delay, which again hinges on his belief that this was the result of the State's failure to fulfill its discovery obligations. As already discussed, that time was necessary for the hearing and disposition of pretrial motions, which is not to be considered a delay caused by either party.

¶15 We turn to the period of December 13, 2018, to February 18, 2019. After the December 10th trial date was adjourned, Clark was ordered released pursuant to his statutory speedy trial demand. He was released on December 11, 2018, and arrested the same day in an unrelated case. The State argued that the arrest should not affect the December 13th trial date, but Clark's trial counsel requested a continuance because counsel was unable to communicate with Clark for the period while Clark was being arrested, transported from the police department to the jail, and booked. This time should not be attributed to the State because it occurred at Clark's request. This delay does not count against the State. *See id.*

¶16 We agree with the State's calculation that 199 days of delay are attributable to it (150 days due to calendar congestion and 49 days from April 16, 2018, to June 4, 2018), none of which is weighted heavily against it.

### C. Assertion of Right to Speedy Trial

¶17    Clark asserted his right to a speedy trial on March 9, 2018, 368 days after the filing of the complaint.  Clark acknowledges that he was tried 361 days— less than one year—after he asserted his right to a speedy trial.  This factor weighs in Clark's favor, but not as strongly as if he asserted his right early on.  *See id.*, ¶33 (weighing the third factor against a defendant because he did not assert his right to a speedy trial until twenty-seven months after the complaint was filed).

### D. Prejudice to Clark

¶18    Clark contends he was severely prejudiced by 681 days of oppressive pretrial incarceration while the State pursued drawn-out bad-faith litigation and by the anxiety and concern surrounding his case.  Clark additionally contends he was subjected to the State interfering with his right to an attorney in order to prepare for trial when he was held incommunicado for the forty-eight hours preceding his December 13, 2018 trial date.

¶19    "Courts consider the element of prejudice with reference to the three interests that the right to a speedy trial protects:  prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense."  *Id.*, ¶34.  The third interest, prevention of impairment of defense, "is the most significant because 'the inability of a defendant [to] adequately … prepare his case skews the fairness of the entire system.'"  *Id.* (alterations in original; citation omitted).

¶20    The circuit court analyzed the prejudice factors, noting that Clark was subjected to pretrial incarceration from his arrest in March 2017 until he was released on bond in December 2018.  The court found that Clark's vague

assertions about anxiety, "without more," constituted minimal prejudice and there was no indication of impairment to the defense. Like the circuit court, we deem Clark's assertions about anxiety and concern surrounding his case inadequate and conclude that he falls short of demonstrating that the delay kept him from adequately preparing his case. After balancing and considering the factors in total, we conclude that Clark's constitutional right to a speedy trial was not violated.

## II. Other-Acts Evidence

¶21 Next, Clark contends he was convicted based on improper other-acts evidence and the prohibited propensity inferences stemming from that evidence. According to Clark, the other-acts depicted him as a professional mobile drug dealer.

¶22 Wisconsin courts use a three-step framework when determining the admissibility of other-acts evidence. *See* *State v. Sullivan*, 216 Wis. 2d 768, 771-72, 576 N.W.2d 30 (1998). First, the evidence must be offered for a permissible purpose under WIS. STAT. § 904.04(2) (2021-22).[3] *Sullivan*, 216 Wis. 2d at 772. Second, the evidence must be relevant under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772. Third, the evidence's probative value must not be substantially outweighed by the danger of unfair prejudice. *Id.* at 772-73; *see* WIS. STAT. § 904.03.

¶23 This court reviews the decision to admit other-acts evidence for an erroneous exercise of discretion. *State v. Marinez*, 2011 WI 12, ¶17, 331 Wis. 2d

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

568, 797 N.W.2d 399. "We will uphold a circuit court's evidentiary ruling if it 'examined the relevant facts, applied a proper standard of law, used a demonstrated rational process and reached a conclusion that a reasonable judge could reach.'" *Id.* (citation omitted).

¶24 Before trial, the State moved to introduce other-acts evidence through Dyllan Mahoney and Zachary Bartosiak, two people to whom Clark was accused of selling heroin and cocaine to immediately before the other crimes in this matter ensued. The proffered other-acts evidence included the fact that both individuals regularly purchased heroin and cocaine from Clark; that Clark is "always" armed with a black handgun that he keeps between the driver's seat and center console; and that Clark drives several different vehicles with heavily tinted windows. The State argued that this evidence was admissible to help prove identity, intent, and knowledge.

¶25 The circuit court agreed with the State and added that some of the evidence could go toward preparation and plan, as well as lending credibility to Mahoney's and Bartosiak's testimony identifying Clark. The court also stated that Mahoney's testimony about Clark frequently having a gun in his vehicle could help answer questions related to the charges he faced for first-degree intentional homicide with use of a dangerous weapon and second-degree recklessly endangering safety. The court addressed the danger of unfair prejudice, noting that "reputation evidence … would be impermissible" and emphasized that there was going to be a need for specificity so as not to delve into rumors and speculation.

¶26 Clark argues that the circuit court's analysis was cursory. While brief, this court concludes that the analysis was adequate and demonstrates that the

court examined the relevant facts, applied the proper standard of law, used a demonstrated rational process and reached a reasonable conclusion. Therefore, while Clark disagrees with the result, he has not shown how the court erroneously exercised its discretion.

¶27 Even if we were to accept Clark's argument that the circuit court erred, we would nevertheless conclude that any error was harmless given the strong evidence of guilt on the counts for which Clark was convicted. *See State v. Thoms*, 228 Wis. 2d 868, 873, 599 N.W.2d 84 (Ct. App. 1999) ("Error in admitting other[-]acts evidence is subject to harmless error analysis."). An error is harmless if the party who benefited from the error "shows 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Monahan*, 2018 WI 80, ¶33, 383 Wis. 2d 100, 913 N.W.2d 894 (citation omitted).

¶28 For instance, on the charge of first-degree recklessly endangering safety with use of a dangerous weapon, multiple police officers, including the victim police officer, testified that Clark fired a gun toward the victim from close range. A civilian bystander who witnessed the shooting confirmed the officers' testimony. Police officers subsequently found a black handgun with Clark's DNA at the scene.

¶29 On the delivery of heroin and delivery of cocaine counts, the officers found the heroin and cocaine when they arrested Mahoney. Along with the officers' observations of Clark's behavior, Mahoney and Bartosiak each testified that they met up with Clark in order to purchase drugs from him.

¶30 On the operating a vehicle without the owner's consent count, the owner of the vehicle Clark was driving when the crimes occurred testified that his

car was stolen. He testified that he did not give anyone permission to take and drive his vehicle.

¶31 On the fleeing or eluding an officer count, Clark's flight from police after the shooting was recorded by a squad car camera. The prosecutor played the video recording for the jury. Police officers also testified about Clark's flight.

¶32 We additionally note that a cautionary instruction was provided to the jurors telling them not to consider the other-acts evidence as character or propensity evidence. *See State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780 ("Jurors are presumed to have followed jury instructions."). In light of the trial evidence as a whole, and the instructions given by the circuit court, we conclude that there is no reasonable possibility that the other-acts evidence contributed to the guilty verdicts. Accordingly, any error was harmless.

## III. Erroneous Exercise of Sentencing Discretion

¶33 Clark argues that the circuit court did not provide specific reasons for its decision to run all but one of his sentences consecutively. In so doing, Clark contends, the circuit court failed to exercise discretion.

¶34 A circuit court is not obligated to specifically explain why it imposed consecutive instead of concurrent terms as long as the court articulates a rationale for the overall sentence. *State v. Berggren*, 2009 WI App 82, ¶¶45-46, 320 Wis. 2d 209, 769 N.W.2d 110. "The court must provide an explanation for the general range of the sentence imposed, not for the precise number of years chosen, and it need not explain why it did not impose a lesser sentence." *State v. Davis*, 2005 WI App 98, ¶26, 281 Wis. 2d 118, 698 N.W.2d 823.

¶35    Clark does not argue that the circuit court failed to weigh all the required sentencing factors and explain its rationale for the overall sentence it imposed. Rather, his sole argument is that the court did not separately explain why it chose consecutive as opposed to concurrent sentences. He relies on *State v. Hall*, 2002 WI App 108, ¶8, 255 Wis. 2d 662, 648 N.W.2d 41, for the proposition that a court must separately explain why it chose consecutive versus concurrent sentences.

¶36    Clark's argument is contrary to this court's case law. We explicitly rejected Clark's reading of *Hall* and clarified that the circuit court is not required to separately explain why it chose a consecutive sentence versus a concurrent sentence. *See Berggren*, 320 Wis. 2d 209, ¶45 ("*Hall* did not, however, establish a new procedural requirement at sentencing that the trial court state separately why it chose a consecutive rather than a concurrent sentence."). Here, the record reflects that after sequentially detailing Clark's "string of bad decisions" and its objectives, the circuit court adequately explained its reasons for the sentences it imposed and did not erroneously exercise its discretion.

## IV.    Denial of Postconviction Motion

¶37    Lastly, we address Clark's argument that the circuit court erred when it denied his postconviction motion without a hearing. He argued that trial counsel was ineffective for failing to provide the circuit court with information about Clark's history of drug addiction and for failing to provide details about Clark's work history. According to Clark, the omission of these details hindered the court's ability to properly determine his eligibility for prison programming.

¶38 A postconviction motion alleging ineffective assistance of counsel does not automatically trigger the right to a *Machner* hearing.[4] *State v. Phillips*, 2009 WI App 179, ¶17, 322 Wis. 2d 576, 778 N.W.2d 157. In our review of a postconviction court's denial of a *Machner* hearing, we review whether the motion on its face alleges sufficient facts, which would entitle the defendant to relief. *State v. Bentley*, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996). "[A]n evidentiary hearing is not mandatory if a defendant's motion presents only conclusory allegations or if the record as a whole conclusively demonstrates that the defendant is not entitled to relief." *State v. Spencer*, 2022 WI 56, ¶47, 403 Wis. 2d 86, 976 N.W.2d 383 (citation omitted).

¶39 To obtain a *Machner* hearing, Clark's motion needed to allege facts sufficiently showing both deficiency and prejudice, which if true, would entitle him to relief. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance results from specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. We need not address both prongs of the *Strickland* test if the defendant fails to make a sufficient showing on either one. *Id.* at 697.

¶40 Clark's motion was properly denied because the record conclusively shows that Clark was not prejudiced. The circuit court denied Clark's ineffective assistance claim and in doing so, noted that Clark's substance abuse history was mentioned at sentencing and additional information about his drug use would not

---

[4] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

13

have altered its decision on his eligibility for the Substance Abuse Program. Additionally, the court explained that Clark's employment history would not have changed its determination as to programming.

¶41 In other words, the result of the proceeding would not have been different absent counsel's alleged errors. Therefore, the record conclusively demonstrates that Clark cannot prove prejudice. *See **State v. Giebel***, 198 Wis. 2d 207, 219, 541 N.W.2d 815 (Ct. App. 1995) (concluding that defendant did not prove prejudice where the circuit court found it would have imposed the same sentence "even if trial counsel had performed at sentencing in the manner suggested by [the defendant]").

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.