# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 1, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1520-CR**

Cir. Ct. No. 2019CF1714

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD A. BYE,

DEFENDANT-APPELLANT.

---

APPEAL from judgments and an order of the circuit court for Eau Claire County: JON M. THEISEN, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Richard Bye appeals judgments, entered upon his guilty and no-contest pleas, convicting him of fourth-degree sexual assault and

intentionally contributing to the delinquency of a child—the second charge as a repeater. He also appeals an order denying his motion for postconviction relief. Bye argues he is entitled to plea withdrawal because the circuit court failed to ascertain that there was a factual basis for Bye's guilty plea to fourth-degree sexual assault. Bye alternatively claims that the court erred by denying his motion for sentence modification. For the reasons discussed below, we affirm the judgments and the order.

## BACKGROUND

¶2 The State charged Bye with sexual assault of a child under sixteen years of age, as a party to a crime; trafficking of a child; two counts of child enticement; intentionally contributing to the delinquency of a child; and two counts of felony bail jumping—all seven counts as a repeater. William Hargrove, who lived in the same building as Bye, was charged in the same complaint with sexual assault of a child under sixteen years of age and soliciting a child for prostitution, both as a repeater.

¶3 According to the complaint, law enforcement was dispatched to a hospital in Eau Claire following the report of a sexual assault. Fifteen-year-old Kim[1] told police that on the previous day, she went to the residence of a man, later identified as Bye, to sell marijuana. Kim stated that she consumed alcohol at the residence and Bye told her that if she went upstairs "she would probably get some

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use a pseudonym instead of the victim's name.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

money for the weed." Kim proceeded to the residence of a man, later identified as Hargrove, who lived upstairs. There, Kim inhaled a line of what she thought was cocaine from the man. Kim added that the man then forced an act of penis-to-mouth intercourse with her, and she blacked out. According to Kim, when she awoke, she was fully clothed with $8.00 and a bag of methamphetamine on her chest. She also felt pain, causing her to believe that she had been anally raped. Kim's mother took her to the hospital where a sexual assault nurse examiner completed a rape kit. During this initial interview, Kim was "difficult to follow" and appeared to be under the influence of methamphetamine.

¶4      Two months later, Kim spoke to law enforcement again and appeared to recall additional details. Specifically, Kim stated that Bye offered her methamphetamine and she took "a lot" before Bye took her by the arm and told her it was time to go upstairs. Kim claimed that she smoked marijuana with Bye and while she was "incoherent" and "tweaking all over the place," Bye had sex with her while repeatedly hitting and slapping her. According to Kim, Bye then told her she was going to have sex with another male, later identified as Hargrove, for $8.00 and a bag of methamphetamine. Kim stated that both men forced penis-to-mouth, penis-to-vagina, and penis-to-anus sex with her.

¶5      Bye denied sexually assaulting Kim, claiming that he only purchased marijuana from her and that he told her to leave after discovering she was fifteen years old. He denied taking Kim to Hargrove's apartment and further claimed that Kim was trying to "sell herself to people." Hargrove told law enforcement that Bye brought a girl over and that he did not know her name. He denied that Bye told the girl to have sex with Hargrove, though Hargrove ultimately admitted having vaginal and oral sex with the girl. State Crime Laboratory testing showed that Hargrove was the source of DNA obtained from Kim's vaginal, cervical and

3

anal swabs, and Bye was the source of DNA obtained from a semen stain on the interior back right knee area of Kim's sweatpants.

¶6      In exchange for Bye's guilty plea to contributing to the delinquency of a child (the parties agreed the factual basis for this plea was Bye's purchase of marijuana from a minor), as a repeater, and his no-contest plea to an amended charge of fourth-degree sexual assault, the State agreed to cap its sentence recommendation for contributing to the delinquency of a child at the top end of the recommendation made in the presentence investigation report (PSI) or five years, whichever was higher.  The State also agreed to remain silent as to both whether the delinquency charge was "sexually motivated" under WIS. STAT. § 973.048(1m), and whether Bye should be ordered to register as a sex offender. With respect to the fourth-degree sexual assault charge, the parties agreed to an immediate sentence of time served.  Upon notice of the plea agreement, however, the circuit court directed the State to submit a motion to amend the Information with its reasons for reducing the sexual assault charge from a Class C felony to a misdemeanor.

¶7      In its motion to amend the Information, the State explained that the amendment was sought for "a number of evidentiary and practical concerns that would make a successful conviction on the Sexual Assault of a Child count uncertain."  The State noted that while Bye's sperm DNA was found on the inside of Kim's sweatpants, it was not found on her person.  The State also noted the differences between Kim's two statements to police—specifically, that Kim's initial forensic interview did not contain allegations of sexual assault by Bye—and acknowledged that the defense would likely seek to utilize these differences to cast doubt on the allegations against Bye from Kim's subsequent interview.  The State added at the plea hearing: "We know that a sexual assault occurred[;] we're just

not confident that the jury would be convinced that it is the higher level felony that we believe it is."

¶8    The circuit court permitted the amendment but it criticized the State for initially overcharging Bye. The court stated: "[U]nder these circumstances, I feel like society needs to make an apology to Mr. Bye. We start out accusing him of a 40-year felony … and we turn around and amend it to [a] nine-month misdemeanor. It's like homicide to jaywalking. It's embarrassing." The court added: "[T]here's a part of me that thinks the appropriate action in this case is to dismiss this case and thereafter allow the State to file the appropriate charge[.]" The court nevertheless proceeded with the plea colloquy and accepted Bye's pleas, consistent with the plea agreement. The remaining counts were dismissed and read in. The court imposed a nine-month jail sentence of time served on the sexual assault offense, and it ordered a PSI with respect to the other offense.

¶9    Out of a maximum possible ten-year sentence for intentionally contributing to the delinquency of a child, as a repeater, the circuit court imposed a seven-year sentence, consisting of four years of initial confinement followed by three years of extended supervision. Concluding that there was a sexual motivation to the crime of contributing to Kim's delinquency, the court ordered Bye to register as a sex offender for fifteen years.

¶10    Bye filed a postconviction motion for plea withdrawal or, in the alternative, for sentence modification to remove the sex offender registration requirement. Bye argued that the circuit court failed to fulfill its duty to establish that there was a factual basis to support his plea to fourth-degree sexual assault. Bye further argued that with no factual basis for the sexual assault offense, there was no basis to order sex offender registration.

¶11    Bye alternatively claimed that the circuit court relied on inaccurate information in requiring him to register as a sex offender.  Specifically, Bye suggested that the court imputed Hargrove's crime to him; both Kim and her mother reasserted at sentencing that Bye raped Kim; and the prosecutor referred to "rape" in his sentencing remarks.  Bye further claimed that the court erred by allowing the State to stand silent on whether the count of contributing to the delinquency of a child was sexually motivated.  The court denied Bye's motion without a hearing, and this appeal follows.

## DISCUSSION

¶12    On appeal, Bye renews his claim that the circuit court failed to ascertain that a factual basis existed for his no-contest plea to fourth-degree sexual assault.  In a postsentence motion for plea withdrawal, the defendant carries the heavy burden of establishing, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice.  *See State v. Thomas*, 2000 WI 13, ¶16, 232 Wis. 2d 714, 605 N.W.2d 836.  The manifest injustice standard requires the defendant to show "a serious flaw in the fundamental integrity of the plea."  *Id.* (citation omitted).  One type of manifest injustice is the failure to establish a sufficient factual basis for a plea.  *State v. Johnson*, 207 Wis. 2d 239, 244, 558 N.W.2d 375 (1997); *see also* WIS. STAT. § 971.08(1)(b) (providing that before accepting a guilty or no-contest plea, the circuit court must make such inquiry as satisfies it that the defendant in fact committed the crime charged).  Whether to allow withdrawal of a plea is within the circuit court's discretion.  *Johnson*, 207 Wis. 2d at 244.  Further, the determination of the existence of a sufficient factual basis lies within the discretion of the circuit court and will not be overturned unless it is clearly erroneous.  *State v. Smith*, 202 Wis. 2d 21, 25, 549 N.W.2d 232 (1996).

¶13 At the plea hearing, the circuit court recited the elements of fourth-degree sexual assault, including the definition of "sexual contact."[2] The court then asked Bye: "[D]o you believe that there is probable cause to support that meaning as discussed with your attorney?" Bye responded affirmatively. Later, addressing Bye, the court stated: "We have gone over the elements. You acknowledge a factual basis to support your pleas to counts 1 and 5?" Bye responded, "Yes, sir." The court then asked defense counsel to put the factual basis to which Bye was stipulating on the record. Defense counsel stated that "on the fourth-degree sexual assault, we acknowledge there is sufficient information in the criminal complaint that if proven, could be the basis for a fourth-degree sexual assault plea, and that's the basis for him pleading no contest."

¶14 As noted above, the complaint alleged that Bye engaged in forced acts of sexual assault with Kim. Acts of intercourse necessarily include acts of sexual contact—i.e., intentional sexual touching. Moreover, where, as in the present matter, a plea is entered pursuant to an agreement, the circuit court "need not go to the same length to determine whether the facts would sustain the charge as it would where there is no negotiated plea." *See **Broadie v. State***, 68 Wis. 2d 420, 423, 228 N.W.2d 687 (1975). This rule "reflects the reality that often in the context of a plea bargain, a plea is offered to a crime that does not closely match the conduct that the factual basis establishes." ***State v. Harrell***, 182 Wis. 2d 408,

---

[2] Consistent with WIS. STAT. § 940.225(3m), the circuit court defined fourth-degree sexual assault as sexual contact with a person without that person's consent. The court then stated that "sexual contact" was defined by state law as: "An intentional touch, by you, of the victim; the touching is of an intimate part, directly or through clothing; it may be done by any body part or an object, so long as it was intentional." The court added that "[s]exual contact requires that you acted with intent to either sexually arouse or gratify either you or the victim or sexually degrade or humiliate either you or the victim." *See* § 940.225(5)(b).

419, 513 N.W.2d 676 (Ct. App. 1994). Thus, a defendant is not permitted to withdraw a plea if a factual basis is shown for a more serious charge reasonably related to the offense to which the plea is offered. *See id.* "This is the case even where a true greater- and lesser-included offense relationship does not exist." *Id.*

¶15 Here, the lesser offense is reasonably related to the charged greater offense. Therefore, the complaint provided an adequate factual basis for the no-contest plea under *Harrell*.

¶16 Bye nevertheless maintains that there was no factual basis for fourth-degree sexual assault because the DNA evidence exonerated him. We disagree. The absence of Bye's DNA on Kim's body does not exonerate him of fourth-degree sexual assault, which requires mere sexual contact. *See* WIS. STAT. § 940.225(3m). Further, the presence of Bye's sperm DNA inside one leg of Kim's pants strongly supports an inference that Bye had some form of sexual contact with Kim, despite his claims to the contrary.

¶17 To the extent Bye contends that he is innocent of the sexual assault charge, he did not enter an *Alford* plea, which is used when a defendant maintains his or her innocence but accepts the consequences of the charged offense. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). Rather, Bye pled no-contest to fourth-degree sexual assault. Further, a valid no-contest or guilty plea waives all nonjurisdictional defects and defenses. *See State v. Lasky*, 2002 WI App 126, ¶11, 254 Wis. 2d 789, 646 N.W.2d 53.

¶18 Bye also asserts that it was error for the circuit court to rely on the criminal complaint when it "had been superseded" by the amended Information. We disagree, as a court may rely on the record as a whole, including the complaint, in determining that a factual basis exists. *See Thomas*, 232 Wis. 2d

714, ¶18. Because the criminal complaint established a factual basis to support Bye's no-contest plea to fourth-degree sexual assault, the court properly denied Bye's motion for plea withdrawal.

¶19 Bye alternatively argues that he is entitled to sentence modification. Based on his assertion that there was no factual basis for his plea to fourth-degree sexual assault, Bye contends there was no basis to order sex offender registration. Because we have rejected Bye's challenge to the factual basis for his plea, as discussed above, his derivative argument likewise fails.

¶20 Bye also claims that the circuit court relied on inaccurate information in requiring Bye to register as a sex offender. A defendant has a due process right to be sentenced on the basis of accurate information. *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant has been denied this right presents a constitutional issue that this court reviews independently. *Id.* A defendant who moves for resentencing on the ground that the circuit court relied on inaccurate information must establish that there was inaccurate information before the court and that the court actually relied on the inaccurate information. *Id.*, ¶31. "Whether the court 'actually relied' on the incorrect information at sentencing [is] based upon whether the court gave 'explicit attention' or 'specific consideration' to it, so that the misinformation 'formed part of the basis for the sentence.'" *Id.*, ¶14 (citation omitted).

¶21 Here, Bye contends that both Kim and her mother reasserted at sentencing that Bye raped Kim. Even were we to assume that these references to rape were inaccurate, Bye has failed to show that the circuit court relied on them in requiring Bye to register as a sex offender. The court expressly declined to adopt Kim's version of events, finding that "[t]he truth of this story is

contaminated by [Kim's drug-induced] blackout." The court added: "I don't know that I would trust anyone in this environment if I was looking for the truth." Instead, the court recounted that Bye "accepted a child into his residence, purchased illegal drugs from that child, … and suggested going upstairs to sell to someone else," namely Hargrove, who sexually assaulted Kim. In ordering Bye to register as a sex offender, the court considered Bye's role in "inviting [Kim] in," Bye's poor decision-making, and his conviction for fourth-degree sexual assault stemming from the episode to conclude there was a sexual motivation to the crime of contributing to Kim's delinquency.

¶22 Bye also emphasizes that the prosecutor referred to "rape" in his sentencing remarks. Specifically, the prosecutor stated generally: "This is a rape offense, and the 15-year-old victim's life has been permanently altered by this," in apparent reference to all of the sexual acts committed against Kim that day. Again, Bye has failed to establish that any alleged inaccuracy in the prosecutor's statement that this was a "rape case" was relied on by the circuit court in sentencing Bye.

¶23 To the extent Bye argues that the circuit court imputed Hargrove's crime to him at sentencing, this argument is not presented in a way that is susceptible to meaningful appellate review. This court need not address issues so lacking in organization and substance that for the court to decide the issues, it would first have to develop them. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). Moreover, the record suggests that the court merely referenced its general knowledge of Hargrove's case, which was related to Bye's case, but it did not punish Bye for Hargrove's conduct. In sum, we are not persuaded that Bye has met his burden of showing that he was sentenced based on inaccurate information.

¶24    Bye also claims that the circuit court erred by allowing the State to stand silent on whether the count of contributing to the delinquency of a child was sexually motivated. As noted above, however, the State's promise to remain silent with respect to whether the offense of contributing to Kim's delinquency was sexually motivated was a bargained-for benefit under the plea agreement. Bye is judicially estopped from attacking a provision of the plea agreement to which he agreed. *See State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (explaining that the doctrine of judicial estoppel is intended to protect against a litigant playing fast and loose with the courts by asserting inconsistent positions).

¶25    Citing *State v. Jorgenson*, 137 Wis. 2d 163, 169, 404 N.W.2d 66 (Ct. App. 1987), Bye nevertheless asserts that "[a] plea agreement which forces a prosecutor to stand mute regardless of the nature or accuracy of the statements made at the sentencing hearing runs contrary to the truth seeking purpose of all judicial proceedings." He contends that allowing such conduct is therefore against public policy. *Jorgenson*, however, is distinguishable on its facts. There, the defendant argued that the State's comments at sentencing breached a plea agreement that required the State to stand completely mute at sentencing. *Id.* at 166-69. The State made its comments to correct factual misstatements by defense counsel. *Id.* Here, the State agreed not to take a position on a particular topic—it did not agree to stand entirely mute. Ultimately, Bye fails to establish that the plea agreement contravened public policy for containing this agreed-upon provision. *See id.* at 169-70.

¶26    Finally, although Bye contends he was entitled to a hearing on his postconviction motion, the circuit court may deny a postconviction motion without a hearing if the motion presents only conclusory allegations or if the record otherwise conclusively demonstrates that the defendant is not entitled to relief.

*See State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Because the record establishes that Bye was not entitled to relief, as discussed above, the court properly denied the motion without a hearing.

    *By the Court.*—Judgments and order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.